IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Andrew J. McCormack, ) | |
| ) | Civil Action No.2:12-cv-03089-DCN-BHH |
| Plaintiff, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| v. ) | **OF MAGISTRATE JUDGE** |
| ) | |
| The Boeing Company, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on Defendant's motion for summary judgment [Doc. 22] pursuant to Federal Rule of Civil Procedure 56. Plaintiff brought this case alleging Defendant failed to hire him and retaliated against him based on his national origin and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTUAL BACKGROUND

In 2009, Andrew J. McCormick ("Plaintiff") was hired by Global Aeronautica, LLC, a predecessor of The Boeing Company ("Defendant"). Plaintiff was over the age of forty at all times relevant to this action. His national origin is British. Pl. Aff. ¶¶ 2, 6, 8-9; Compl. ¶ 59. Plaintiff began work as an Aircraft Painter A in the paint department which was supervised by Frank Prado ("Prado"). *See* Pl. Aff. ¶ 7; Pl. Dep. at 137-138; Compl. ¶ 10. After Boeing acquired Global Aeronautic, Plaintiff became an employee of Defendant. In January 2010, Plaintiff executed the 2010 Boeing Code of Conduct. *See* Pl. Ex. 7.[1]

---

[1] "Pl. Ex. __" refers to exhibits to Plaintiff's opposition memorandum [Doc. 31]. "Dft. Ex. __" refers to exhibits to Defendant's motion for summary judgment.

On January 24, 2010, Plaintiff submitted a complaint to Defendant's internal Equal Employment Opportunity ("EEO") office regarding allegedly discriminatory remarks about Plaintiff's national origin made by Prado (Plaintiff's supervisor). *See* Pl. Ex. 17. Tim Jennings ("Jennings") took over Prado's position in January 2010. Jennings initially worked a split shift to support two shifts, until Ray Owens ("Owens") was hired as the manager of the second shift. Plaintiff worked on the second shift. *See* Pl. Exs. 26, 27

On March 3, 2010, after conducting an internal EEO investigation, Defendant issued an EEO Investigation Report indicating Pardo was in violation of Defendant's workplace harassment policy. Prado was disciplined and transferred out of the paint department. *See* Pl. Ex. 18; Pl. Dep. at 205.

On May 3, 2010, Plaintiff contacted Defendant's EEO office and alleged he was being retaliated against by Evert Witman (another painter) based on his complaints against Prado. Plaintiff asserts the EEO complaint was closed at his request because he determined he did not wish to pursue a complaint against Evert Witman. *See* Pl. Ex. 20.

On July 2, 2010, Plaintiff was promoted to the position of Painter B. With his promotion, Plaintiff received a raise in pay. Pl. Ex. 4. In December 2010, Plaintiff received a performance evaluation for the period of June 6 to December 31, 2010, in which he was rated "meets" or "exceeds" in all categories. Pl. Aff., Attach. B. Owens recommended and Plaintiff received the highest raise of all employees in the paint department. Owens Dep. at 34; *see* Pl. Ex. 16.[2]

Plaintiff requested a transfer and was placed in Carroll Washington's work group in April 2011. The parties appear to dispute whether this was a transfer or a loan of Plaintiff to the other department. *See* Pl. Exs. 3, 4, 30.

---

[2] Plaintiff makes various allegations of being treated differently than other individuals in the paint department during his employment there. *See* Pl. Opp. Mem. at 7-8. He has, however, not alleged a disparate treatment claim in his Complaint.

2

In approximately February 2011, Plaintiff talked to Dallas Ratliff ("Ratliff"), who appears to be another employee of Defendant, about a paint density issue. In a memorandum, Stephanie McCarthy (who appears to be an EEO employee) wrote that she had a telephone conversation with Ratliff in which Ratliff stated Plaintiff was concerned about paint adhesions, Ratliff talked to the second shift quality manager who stated that the panel in question passed inspection, and Ratliff reported the concern to Tina Weis (Ratliff's manager). Pl. Ex. 29.

On May 16, 2011, Plaintiff resigned from Defendant. His resignation was finalized on May 20, 2011. In his Complaint, Plaintiff alleged he resigned from Defendant "due to the failure of Boeing personnel to clarify and rectify his transfer to another department." Compl. ¶ 25. In his EEO affidavit, he asserts he left employment with Defendant due to frustration with mismanagement and being treated unfairly. Pl. Aff., Attach. E. In his deposition, exit interview survey, and answers to requests to admit, Plaintiff complained he was not happy with all the time sitting around (not having enough work); he was not allowed to transfer back to the paint department; he thought that others who worked in the paint department (including managers) did not have a lot of aircraft background or knowledge; he was not being compensated sufficiently for his knowledge; his compensation was not in line with industry pay scales; he was leaving Defendant for better prospects; and he did not receive enough respect from management. Pl. Dep. at 105-106, 154-155, 163, 174-175; Def. Ex. H (Exit Interview Survey); Ex. I (Plaintiff's Answers to Defendant's Requests to Admit, Nos. 3, 14).

Plaintiff held six different jobs with different employers between May and November 2011. Pl. Dep. at 245. On October 31, 2011, Defendant posted an announcement for a Aircraft Painter A position which Plaintiff applied for in November 2011. This position was an entry level position and paid less than the Painter B position he held at the time he resigned from employment with Defendant. Plaintiff Dep. at 223; Jennings Dep. at 27. Nine

people were hired, with the hiring decisions made by Jennings and Owens. Of the nine, six were over the age of forty. Def. Ex. K (Chart of Jobs Plaintiff Applied for and the Applicants Hired for the Positions).

After not being selected, Plaintiff filed a complaint with Defendant's EEO office. Pl. Dep. at 270. In February 2012, Plaintiff applied for the job of Aircraft Painter Level C, located on Defendant's Flight Line. The parties do not appear to dispute that David Bradley ("Bradley") was the hiring manager for the Flight Line and made the hiring decisions for this position. Two individuals were hired, one over and one under the age of forty. Bradley testified that Plaintiff was not hired because he thought Plaintiff's experience and skill fit a different aircraft mold in that Plaintiff possessed extensive inside of an airplane hanger experience rather than outside painting experience. His opinion was that the two candidates hired had more relevant experience and were better qualified than Plaintiff. Bradley Dep. (Def. Ex. L). at 20, 22.

In March 2012, Plaintiff applied for the positions of Aircraft Painter, Level A and Aircraft Painter, Level B. The Painter A position paid less than Plaintiff's previous Painter B position, and the Painter B position paid the same as his previous position. Pl. Dep. at 224. Jennings and Owens again were the hiring managers. Seven persons were hired for the Level A position, five of which were over the age of forty. One person, who was over the age of forty (approximately three years younger than Plaintiff), was hired for the Painter B position. Def. Ex. K. Jennings and Owens stated they did not hire Plaintiff for the same reasons as before, specifically their concerns over training expenses (even through Plaintiff went through training before he would have to go through it again) and the potential costs of hiring only to have Plaintiff resign again because his pay was too low. *See* Jennings Dep. at 26-27, 47; Owens Dep. at 21.

In April 2012, Plaintiff applied for the position of Fabrication Specialist B, posted by Stephen Lopez ("Lopez"). In May 2012, Plaintiff applied for the position of Electrical

4

Assembler B, posted by Michael Sobotta ("Sobotta"). These positions were not in the paint department and Plaintiff did not know either of these hiring managers. *See* Pl. Dep. 224-225, 313. All three individuals hired for the Fabrication Specialist B position were over the age of forty. Of the twenty-three individuals hired for the Electrical Assembler B job, ten were over the age of forty. *See* Def. Ex. K.[3]

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in February 2012, alleging Defendant failed to rehire him on the basis of his age and national origin. Pl. Aff., Attach. F. Plaintiff appears to have filed an additional EEO complaint with Defendant in June 2012 concerning additional jobs for which he was not hired. The EEOC issued a right to sue notice on July 27, 2012. Compl., Attach. 1.[4]

## APPLICABLE LAW

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

---

[3] In his opposition memorandum, Plaintiff includes a section titled "FACTUAL DIFFERENCES." He first asserts Jennings testified (in an EEO statement) that Jennings and Owens looked for key words such as "paint" and "safety" (to select candidates), but in a deposition Jennings testified "he was not aware of what the keywords were for paint shop exactly." Plaintiff fails, however, to provide a deposition cite. Pl. Opp. Mem. at 20. Further, it is unclear how this difference would change the recommendation discussed below as Defendant appears to concede Plaintiff was qualified for the Painter A and B positions for which Jennings and Owens were the hiring managers. His second alleged factual difference concerns his quality complaint to Ratliff. This, in the light most favorable to Plaintiff, has been included in the facts discussed above.

[4] In his memorandum in opposition to summary judgment, Plaintiff makes assertions about alleged discriminatory practices as to African-American employees. Plaintiff has not alleged that he is a member of this protected group and has not made any allegations concerning racial discrimination.

5

affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing ... that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

Defendant contends Plaintiff fails to establish prima facie cases as to his national origin, age discrimination, and/or retaliation claims. Further, Defendant argues that even if Plaintiff can establish a prima facie case, it has articulated legitimate, nondiscriminatory reasons for its actions which Plaintiff fails to show are pretext for discrimination. Plaintiff

argues that he has presented sufficient evidence to establish his case and avoid summary judgment.

**I.  National Origin and Age Discrimination (Failure to Hire)**

Plaintiff alleges Defendant failed to hire him for the six positions outlined above (Aircraft Painter A, Aircraft Painter C, Aircraft Painter A, Aircraft Painter B, Fabrication Specialist B, and Electrical Assembler B) based on his age and/or national origin in violation of Title VII and/or the ADEA. As the Fourth Circuit has explained, Plaintiff may avert Defendant's summary judgment motion and establish his failure to promote claim "through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race or gender motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e–2(m). The Supreme Court has held that a mixed-motive analysis is not appropriate in an age discrimination case under the ADEA. *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 175-177 (2009).

Alternatively, a plaintiff may "proceed under [the *McDonnell Douglas*] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285. Plaintiff does not attempt to establish his claims using direct or circumstantial evidence but relies exclusively on the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting proof scheme.

Under *McDonnell Douglas*, an employee must first prove a prima facie case of discrimination by a preponderance of the evidence. If he succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the prima facie case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802–05.

This same framework has been adapted for ADEA claims. *See Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 234–35 (4th Cir.1991).

### A. Prima Facie Case (Failure to Hire)

To establish his prima facie case of failure to hire based on age or national origin, Plaintiff must show (1) he is a member of a protected class; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position in favor of someone outside the protected class under circumstances giving rise to an inference of unlawful discrimination. *Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004; *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998).

The parties do not dispute that Plaintiff meets the first two elements, as he is a member of the protected class based on his age and national origin and he applied for the positions in question. The parties appear to agree that Plaintiff meets the third element as to the positions of Painter A and Painter B, but disagree as to whether he was qualified for the other positions. The parties also disagree as to whether Plaintiff meets the fourth element, as discussed below.

#### 1. Qualified for the Positions

Defendant concedes that Plaintiff was qualified for the positions of Painter A and B, but argues that he was not qualified for the Fabrication Specialist B or the Electrical Assembler B positions. It is unclear whether Defendant found Plaintiff unqualified for the

8

Painter C position, as Defendant merely argues there were more qualified applicants. For purposes of summary judgment, Plaintiff has presented sufficient evidence to show he was qualified for the Painter A, B, and C positions.

Plaintiff fails to show that he was qualified for the Fabrication Specialist position. He admits he had no experience as a fabrication specialist. Pl. Dep. at 311. Thus, he fails to establish a prima facie case of discrimination as to this position.

Plaintiff asserts he has three and one-half years experience as an Electrical Assembler B. *Id.* For purposes of summary judgment, Plaintiff has presented sufficient evidence to show he was qualified for the Electrical Assembler B position.

### 2. Rejected under Circumstances Giving Rise to an Inference of Unlawful Discrimination

Plaintiff argues that he was rejected for the positions under circumstances giving rise to an inference of unlawful discrimination because: (1) he performed all requirements of his position while working with Defendant previously, received ratings of meets or exceeds, and the evaluations did not mention his alleged propensity to complain; (2) it is clear there was age discrimination in the paint department because (in 2011) the employees who had less than a year of experience were younger and the older individuals had been hired through Global Aeronautica; (3) Donald Dietrich ("Dietrich") testified that Plaintiff was considered a problem because he pointed out issues to Defendant; and (4) Jennings called Plaintiff a "wanker."[5]

---

[5]Defendants argue that they did not discriminate against Plaintiff because its hiring managers were over the age of forty. Plaintiff appears to argue that this assertion establishes the fourth prong of his prima facie case. He has not disputed that these managers were over forty years of age and fails to show how Defendant's assertion is evidence that he was not hired under circumstances giving rise to an inference of unlawful discrimination.

Additionally, Plaintiff argues Defendant cannot argue that it did not discriminate against him based on age because the company hired him in 2009 when he was forty-seven years old. Plaintiff originally asserted (*see* Compl. ¶ 10) he was initially hired by Defendant, but now asserts he was hired by Global Aeronautica. Plaintiff has not disputed Defendant's assertion that it was not required to keep all Global Aeronautica employees after the purchase such that it in effect "hired" Plaintiff. Further, whether or not Defendant hired Plaintiff, It is undisputed that Plaintiff worked for Defendant, and was at least forty-seven years of age, prior to his voluntary resignation from the company. Further, even if Defendant did not "hire" Plaintiff previously, such

9

Plaintiff fails to establish the fourth prong of his prima facie case of discrimination. His assertion that he previously met his job expectations as a Painter A or B, received a favorable evaluation, and/or that the evaluation did not mention his propensity to complain about his pay and other issues does not establish the fourth prong. Defendant has not disputed that Plaintiff was qualified for the Painter A and B jobs. Further, the favorable evaluation was issued prior to Plaintiff's resignation which appears to have been based (at least in part) on his belief he should have been paid more. There is no indication that the failure to include Plaintiff's complaints about his pay and other issues on his evaluation form shows that he did not complain. Additionally, Plaintiff has not disputed that he voiced complaints about his pay. *See* Pl. Dep. at 173.

Plaintiff appears to argue that he has met his fourth prong burden based on Plaintiff's Exhibit 16 which appears to be a listing of proposed salary increases in 2011. This exhibit does not provide any data indicating which employees were hired by Jennings and/or Owens and does not relate to the positions for which Plaintiff later applied. *See* Pl. Ex. 16.

Plaintiff also appears to point to Dietrich's EEO answers as indicating that Plaintiff was a troublemaker. Plaintiff has not shown that Dietrich relayed this information to any of the hiring managers. In addition, there is no indication that any failure to hire Plaintiff because he was a troublemaker was based on his age or national origin.

Plaintiff appears to argue that he has established the fourth prong of his national origin claim because Dietrich allegedly heard Jennings call Plaintiff a "wanker" on one occasion when Jennings was talking to someone else (Dietrich does not remember who that was). Pl. Ex. 28.[6] Plaintiff does not explain how this shows that Jennings discriminated

---

evidence fails to show that Defendant's failure to hire Plaintiff for the six positions in question establishes the fourth prong of Plaintiff's prima facie case.

[6]In his opposition memorandum, Plaintiff cites to Plaintiff's Exhibit 27. Review of that exhibit fails to reveal anything concerning Jennings (or any other employee of Defendant) calling Plaintiff this term. Plaintiff appears to have mistakenly referenced Exhibit 27, rather than Exhibit 28.

against him based on his national origin. Further, as to the Painter C, Fabrication Specialist, and Electrical Assembler B positions, Jennings was not the hiring manager.[7]

Additionally, as to his ADEA claims, Plaintiff simply has not shown that "but-for" his age, Defendant would not have taken the alleged adverse actions. "[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).

### B. Legitimate, Nondiscriminatory Reasons/Pretext

Even if Plaintiff has established a prima facie case of age and/or national origin discrimination, Defendant has articulated legitimate, nondiscriminatory reasons for not hiring Plaintiff. Plaintiff has not shown that the asserted reasons are pretext for discrimination.

As to the Painter A and Painter B positions, Defendant provides that Plaintiff was not hired because Jennings and Owens knew Plaintiff was not happy with his pay or his job responsibilities (*see* Jennings Dep. at 26-27; Owens Dep. at 21) and neither of these factors had changed at the time Plaintiff applied to be rehired. They also were concerned that Plaintiff would resign again, needlessly increasing Defendant's training expenses and wasting their time. *See* Jennings Dep. at 26-27, 47; Owens Dep. at 21. Plaintiff appears to argue pretext because he claims Dietrich testified that he (Plaintiff) did not complain at work. Plaintiff does not provide a cite to this alleged testimony. Review of portions of Dietrich's deposition submitted by Defendant indicates Dietrich merely stated he did not know if

---

[7]Plaintiff is a British Citizen who is a legal alien in the United States. *See* Pl. Ex. 8. To the extent Plaintiff is attempting to assert that he was discriminated against based on citizenship, his claim fails. Title VII's prohibitions of unlawful employment practices extend to national origin, not to citizenship or alienage. *See Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 93 (1973). Under Title VII, the citizenship of the parties at issue is not the question; "national origin" refers to an individual's ancestry, not his or her citizenship. *See id.* at 89. However, the Supreme Court also recognized in *Espinoza* that in some instances "a citizenship requirement might be but one part of a wider scheme of unlawful national-origin discrimination" and that Title VII "prohibits discrimination on the basis of citizenship whenever it has the purpose or effect of discriminating on the basis of national origin." *Id.* at 92; *see also* 29 C.F.R. § 1606.5(a) ("In those circumstances, where citizenship requirements have the purpose or effect of discriminating against an individual on the basis of national origin, they are prohibited by [T]itle VII.").

11

Plaintiff ever announced pay complaints "while working on airplanes." Dietrich Dep. 10. Dietrich testified, however, that Plaintiff complained about the lack of experienced painters with him and Plaintiff complained to him "quite often" about the pay. *Id.* at 9-10. Plaintiff also admitted he was unhappy with and complained about his pay. *See* Pl. Dep. at 173. Jennings testified that Plaintiff regularly voiced that he was overqualified and was not getting enough money. Jennings Dep. at 22. Owens testified that Plaintiff's big complaint was about the pay and Plaintiff complained "about every day." Owens Dep. at 16-17.

As to the Painter C position, Defendant articulated that Plaintiff was not hired because he was less qualified for the position than those who were ultimately hired. Plaintiff believes he was more qualified, but merely bases this on his own assertion as to his qualifications. It is the employer's perception, not the employee's perception, that is controlling. *See Dejarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998); *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980). Federal Courts "do not sit as a 'super-personnel department weighing the prudence of employment decisions' made by the defendants." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2005), citing *DeJarnette v. Corning, Inc.*, 133 F.3d at 299. Plaintiff references an EEO report indicating he was more qualified. The exhibit referenced, however, merely states that Bradley reiterated his reasons for finding other employees more qualified. *See* Pl. Ex. 48.

Defendant asserts that Plaintiff was not qualified for the Fabrication Specialist position and those hired for the Electrical Assembler B position were more qualified than Plaintiff. Plaintiff appears to argue that these reasons are pretextual because he "was qualified for wiring harness work." Pl. Opp. Mem. at 35. In support of this Plaintiff provides only his affidavit in which he states he has "3 ½ years wire harness fabrication and installation experience." Pl. Aff., ¶ 5. Plaintiff testified that he did not have any experience as a fabrication specialist. Pl. Dep. at 311. He testified that he had three and a half years experience as an "Assembler B-Electrical," but also admitted the electrical jobs went to

people with twenty-plus years experience. Pl. Dep. at 311, 315. He fails to show that Defendant's reasons for not hiring him for the Fabrication Specialist or the Electrical Assembler positions were pretext for discrimination.

Additionally, Plaintiff argues pretext because "[i]t is clear that Bradley was aware of information regarding the Plaintiff and failed to interview him due to that." Plaintiff's Opp. Mem. at 35. In support of this, Plaintiff cites to an internal EEO statement by Dietrich. This statement, even if admissible, fails to support Plaintiff's assertion. *See* Pl. Ex. 28.[8] Further, in his EEO statement, Hammond stated he only told Bradley that he worked with Plaintiff when Plaintiff was on the first shift, Plaintiff eventually moved to the second shift, Hammond heard from other employees that Plaintiff was unhappy in that shop and requested to be moved out of the paint department, and Hammond later heard that Plaintiff quit his job with Defendant. Hammond denied making a comment to Dietrich that Plaintiff would never be hired into the paint shop or final assembly. Pl. Ex. 41.

## II.     Retaliation

Plaintiff argues that Defendant failed to rehire him in retaliation for filing complaints of discrimination. Title VII makes it unlawful for an employer "to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3. "To establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that [he] engaged in protected activity, (2) that an adverse

---

[8]Dietrich stated:
One time ....I passed [Hammond] in the hallway and told him just in passing that [Plaintiff] would like to come back. [Hammond] said that [Plaintiff] would never come to work in Final Delivery. He said the new manager (**I don't know who that is**) would not hire [Plaintiff] because this manager said he didn't want anyone who would be a troublemaker in his group.
Pl. Ex. 28 (emphasis added).

employment action was taken against [him], and (3) that there was a causal link between the protected activity and the adverse employment action." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998). Under the indirect, burden-shifting method set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), once a plaintiff establishes a prima facie case of Title VII retaliation, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that "legitimate reasons offered by the defendant were not its true reasons but were a pretext" for retaliation. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Though the evidentiary burdens shift back and forth under this framework, the plaintiff always bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against him. *Id.* The Supreme Court recently held that Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, __ U.S. __, __, 133 S.Ct. 2517, 2528, 186 L.Ed.2d 503 (2013). Stated differently, to prevail on a retaliation claim, the plaintiff must provide proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. *Id.* at 2533.

The parties appear to agree that Plaintiff took part in the protected activities of filing the EEO complaint concerning Prado in January 2010 and the EEO complaint in December 2011[9] after he was not hired for the first Painter A position.[10] They also appear to agree that

---

[9]Defendant contends this was not actually filed until January 2012. Def. Reply at 10, n. 4.

[10]In his retaliation section of his opposition memorandum, Plaintiff does not appear to assert retaliation based on the quality or ethics complaint to Ratliff in approximately February 2011. Further, he has not established a causal connection based on time and there is no indication any hiring manager knew of this complaint.

Plaintiff has shown he was subjected to adverse actions of not being hired for any of the positions for which he applied.

Defendant contends Plaintiff fails to establish a causal connection. In his opposition memorandum, Plaintiff argues there is a causal connection between his December 2011 EEO complaint and the failure to hire him for the Painter C position (which he applied for in February 2012).

Plaintiff fails to establish a causal connection and thus fails to establish a prima facie case of retaliation. He fails to establish a causal connection between his 2010 EEO complaint and his application for any of the six positions. He appears to admit he cannot show a causal connection based on his January 2010 EEO complaint. Instead he argues that the 2010 complaint "sets forth the pretense of the Defendant to retaliate." Pl. Opp. Mem. at 40.

Plaintiff does not show a causal connection based on time alone as his EEO complaint was a year and a half (or more) prior to his applications for rehire. *See, e.g., Pascual v. Lowe's Home Ctrs., Inc.*, No. 05-1847, 2006 WL 2226571 (4th Cir. Aug. 2, 2006)(holding that three to four months between the termination and protected activities is too long to establish a causal connection by temporal proximity alone); *Shields v. Federal Express Corp.*, No. 03-2103, 2005 WL 102990 (4th Cir. Jan. 19, 2005)(three to four months was insufficient to raise an inference); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001)("A six month lag is sufficient to negate any inference of causation."); *Garrett v. Lujan*, 799 F. Supp. 198, 202 (D.D.C.1992)(concluding that the passage of nearly a year precluded an inference of causal connection); *Parrott v. Cheney*, 748 F. Supp. 312 (D.Md.1989)(even the passage of as little as five months between filing EEOC complaint and adverse action may be enough to negate causal connection in a particular factual context), *aff'd per curiam*, 914 F.2d 248 (4th Cir. 1990).

Plaintiff has presented no other evidence suggesting a connection between the two events. Shortly after Plaintiff filed his 2010 EEO complaint, Prado ceased being Plaintiff's supervisor and Jennings became Plaintiff's supervisor (apparently for reasons other than the EEO complaint). After the EEO investigation, Prado was disciplined. After that time, Plaintiff did not work with Prado again or have any further issues with him. *See* Pl. Dep. at 205, 318-319; Jennings Dep. at 21-22. Owens, Jennings, and Bradley all testified they were not aware of Plaintiff's 2010 complaint prior to their decisions being made. *See* Owens Dep. at 15-16, 21-22; Jennings Dep. at 21; Bradley Dep. at 11. Plaintiff has not produced any evidence to show that any hiring manager (including Owens, Jennings, Bradley, Sobotta, or Lopez) was aware of his 2010 complaint prior to making their hiring decision(s). For a plaintiff to establish a causal connection, he must show that the actual individual who took the adverse employment action was aware of his protected activity. *See Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006)(holding that even if the employer's failure to re-hire could be considered an "adverse action" sufficient to sustain a retaliation claim, the employee must show that the relevant hiring officials, not the company generally, were aware of his contact with the EEO office); *King v. Marriott Int'l, Inc.*, 520 F.Supp.2d 744, 746-747 (D.S.C. Mar. 27, 2007)(holding that to establish his retaliation claim the plaintiff must demonstrate that the relevant hiring officials were aware he filed an EEOC charge at the time the alleged retaliation occurred); *Hooven-Lewis v. Caldera*, 249 F.3d at 273 (declining to infer knowledge of the plaintiff's EEOC charge to the company or hiring panel of three despite the fact that one member of the panel was aware of the complaint).

Plaintiff next argues that Defendant retaliated against him for filing the December 2011 EEO complaint by not hiring him for the Painter C position.[11] He fails to establish a prima facie case because he fails to establish a causal connection. Bradley expressly denied

---

[11] Plaintiff did not argue that the failure to hire him for any of the other positions was in retaliation for the December 2011 EEO complaint. *See* Pl. Opp. Mem. at 41.

16

any knowledge of any EEO complaints. Bradley Dep. at 11. There is no indication that Hammond mentioned Plaintiff's EEO December 2011 complaint (or any other EEO complaint) to Bradley. *See* Pl. Ex. 41. Plaintiff concedes he has no actual evidence that Hammond or anyone else told Bradley about his EEO complaints. *See* Pl. Opp. Mem. at 16, 34. Plaintiff attempts to assert that Dietrich's EEO statement shows Hammond must have told Bradley that Plaintiff was a troublemaker. As discussed above, however, Dietrich did not identify the manager Hammond spoke with and the conversation did not establish that Hammond or anyone else told Bradley that Plaintiff made an EEO complaint. Dietrich also testified that Bradley did not know who Plaintiff was. Dietrich Dep. at 12.

Even if Plaintiff could establish a prima facie case of retaliation, Defendant has articulated legitimate, nondiscriminatory reasons for not rehiring Plaintiff, as discussed above. Additionally, as discussed above, Plaintiff fails to show that the reasons asserted are pretext for discrimination. Plaintiff also fails to show that Defendant's alleged desire to retaliate against him was the "but-for" cause of the failure to hire him.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Defendant's Motion for Summary Judgment [Doc. 22] be GRANTED and Plaintiff's claims be dismissed *with prejudice*.

IT IS SO RECOMMENDED.

March 5, 2014  
Charleston, South Carolina

s/Bruce Howe Hendricks  
United States Magistrate Judge

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).