IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ANDREW J. McCORMACK, ) | |
| ) | No. 2:12-cv-3089-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| THE BOEING COMPANY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the court on Magistrate Judge Bruce Howe Hendricks's Report and Recommendation ("R&R") that this court grant The Boeing Company's ("Boeing") motion for summary judgment. Plaintiff Andrew J. McCormack ("McCormack") filed written objections to the R&R. For the reasons set forth below, the court adopts the R&R and grants Boeing's motion for summary judgment.

## I.  BACKGROUND

### A.    Factual Allegations[1]

In 2009, McCormack, who was over the age of forty at all times relevant to the action and whose country of national origin is Great Britain, was hired by Global Aeronautica, LLC. Pl.'s Aff. ¶¶ 2, 6, 8-9; Compl. ¶ 59. McCormack began work as an aircraft painter level A in the paint department and was supervised by Frank Prado ("Prado"). Pl.'s Aff. ¶ 7; Pl.'s Dep. 137:24-138:3. After Boeing acquired Global Aeronautica, McCormack became a Boeing employee. Pl.'s Aff. ¶ 9, 11.

---

[1] The facts and evidence are considered and discussed in the light most favorable McCormack, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

1

On January 24, 2010, McCormack submitted a complaint to Boeing's internal equal employment opportunity ("EEO") office regarding allegedly discriminatory remarks made by Prado about McCormack's national origin. Pl.'s Resp. Ex. 17. Boeing investigated the complaint, issued a report indicating that Prado was in violation of the company's workplace harassment policy, disciplined him, and transferred him out of the paint department. Pl.'s Dep. 205:6-17; Pl.'s Resp. Ex. 18. Tim Jennings ("Jennings") became McCormack's supervisor for a time before Ray Owens ("Owens") was hired as the manager of the second shift, on which McCormack worked. Pl.'s Resp. Exs. 26, 27.

On May 3, 2010, McCormack contacted the EEO office and alleged he was being retaliated against by another painter based on his complaint against Prado. Pl.'s Resp. Ex. 20. McCormack later stated that he did not wish to pursue the allegation and the complaint was closed at his request. Id. Additionally, at some point McCormack's coworker Donald Dietrich overheard Jennings call McCormack a "wanker."[2] Pl.'s Resp. Ex. 27. McCormack commonly referred to himself as a "wanker" and his coworkers came to use the term. Id. While McCormack thought it was funny initially, Dietrich asserts that he later "didn't think it was funny anymore." Id.

On July 2, 2010, McCormack was promoted to the position of aircraft painter level B and received a pay raise. Pl.'s Resp. Ex. 4. In December 2010, McCormack received a performance evaluation for the period of June 6, 2010 through December 31, 2010. Pl.'s Aff. Ex. C. The evaluation indicated that McCormack either "met" or "exceed[ed]" expectations in every category. Id. Owens recommended, and McCormack

---

[2] A wanker is a chiefly British and usually vulgar term for a jerk or a person who masturbates. Wanker Definition, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/wanker (last visited MAr. 31, 2014).

2

received, the highest raise of all employees in the paint department. Owens Dep. 34:1-17; Pl.'s Resp. Ex. 16.

During this time, McCormack felt he was being underpaid. Pl.'s Dep. 173:3-8. He also became frustrated with the fact that his group in the paint department did not have enough work, and he became tired of "sitting around" and "doing nothing." Pl.'s Dep. 105:22-106:4, 142:10-14, 142:20-22, 144:20-23. McCormack requested, and was granted, a transfer to another department, hoping that the new department would be busier.[3] Pl.'s Resp. Ex. 30; Pl.'s Dep. 142:10-14; 148:17-149:11. However, McCormack shortly thereafter became frustrated with his new department because there was "confusion" as to his role. Pl.'s Dep. 151:25-152:8. Within about two weeks of his transfer, McCormack requested to transfer back to the paint department. Pl.'s Dep. 152:9-14; 153:8-154:6. This request was not granted and Jennings told McCormack to give the transfer more time. Pl.'s Dep. 154:17-24.

On May 16, 2011, McCormack resigned from Boeing because management failed to "clarify and rectify his transfer to another department" and because they would not let him transfer back into the paint department. Compl. ¶ 25; Pl.'s Dep. 163:21-22. In an exit survey, McCormack indicated that he was leaving for better prospects, reiterated his complaints about not being compensated adequately for his knowledge, and complained that he did not receive enough respect from some managers. Def.'s Mot. Ex. H.

Following his resignation, McCormack held six different jobs with different employers. Pl.'s Dep. 245:7-15. On October 31, 2011, Boeing posted an opening for an

---

[3] There seems to be a dispute regarding whether McCormack was transferred or loaned to the other department. See Pl.'s Resp. 37 ("The record clearly represents that the Plaintiff was not transfer (sic) but only on loan."); but see Pl.'s Dep. 142:10 ("I transferred to another department . . . ."). This factual dispute is not material.

3

aircraft painter level A position, which McCormack applied for in November 2011. Compl. ¶ 26; Pl.'s Dep. 244:21-245:1; Def.'s Mot. Ex. K. This position was an entry-level position and paid less than the painter level B position he held at the time he resigned. Pl.'s Dep. 245:20-24. Jennings and Owens hired nine people, six of whom were over the age of forty. Jennings Dep. 32:13-18; Def.'s Mot. Ex. K. Jennings and Owens did not hire McCormack because they knew that he was not happy with his pay or his job responsibilities before resigning. Jennings Dep. 27:4-28:3; Owens Dep. 21:6-12. They were also concerned that McCormack would needlessly increase Boeing's training expenses, considering that he would have to go through the same training he had already gone through and that he was a threat to resign again. Jennings Dep. 27:1-4; Owens Dep. 21:12-18. After not being selected, McCormack filed a complaint with Boeing's EEO office in December 2011. Pl.'s Dep. 270:7-11. Boeing investigated and determined that no discrimination occurred. Pl.'s Dep. 291:25-292:10.

In February 2012, McCormack applied for an aircraft painter level C job with Boeing, which was located on its flight line. David Bradley was the hiring manager for the flight line and made the hiring decisions for this position. Pl.'s Resp. 16. Two individuals were hired for the position, one over and one under the age of 40. Def.'s Mot. Ex. K. According to Bradley, McCormack was not hired because his experience "fit a different . . . aircraft painting mold" – specifically, most of McCormack's experience was inside painting and Bradley was looking for someone with outside painting experience. Bradley Dep. 20:7-20.

In March 2012, McCormack applied for two more positions at Boeing: aircraft painter level A and an aircraft painter level B. Pl.'s Resp. 18. Seven people were hired

for the level A position, five of whom were over the age of forty. Def.'s Mot. Ex. K. One person, who was over the age of forty, was hired for the painter B position. Id. Once again, Jennings and Owens stated that they did not hire McCormack because they had concerns over training expenses and the potential costs of hiring McCormack only to have him resign again because his pay was too low. Jennings Dep. 26:24-27:15, 47:13-19; Owens Dep. 21:3-18.

McCormack then applied for two positions outside the paint department. In April 2012, he applied for a fabrication specialist B position. Pl.'s Resp. 19, 20. All three individuals hired for the position were over the age of forty. Def.'s Mot. Ex. K. In May 2012, McCormack applied for an electrical assembler B position. Pl.'s Dep. 311:19-312:12. Of the twenty-three individuals hired for this position, ten were over the age of forty. Def.'s Mot. Ex. K. McCormack filed an additional complaint with the Boeing EEO office in June 2012, alleging that Boeing failed to rehire him on the basis of his age and national origin. Pl.'s Dep. 306:13-21. It is unclear what happened with this final EEO complaint.

### B.     Procedural History

McCormack filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") in February 2012, alleging that Boeing failed to rehire him on the basis of his age and national origin. Pl.'s Aff. Ex. F. The EEOC issued a right to sue notice on July 27, 2012. Compl. Ex. A.

On September 18, 2012, McCormack filed a complaint in state court asserting claims for discrimination and retaliation on the basis of national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., and for

discrimination and retaliation on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. Boeing removed the case to this court on October 25, 2012 and moved for summary judgment on July 1, 2013. McCormack responded on August 5, 2013. Boeing filed a reply on August 15, 2013. The magistrate judge filed an R&R on March 5, 2014, recommending that the court grant Boeing's motion for summary judgment. McCormack filed objections to the R&R on March 24, 2014. This matter has been fully briefed and is ripe for the court's review.

## II.   STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985). In absence of a timely filed objection to a magistrate judge's R&R, this court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). This court may accept, reject, or modify the report of the magistrate judge, in whole or in part, or may recommit the matter to him with instructions for further consideration. 28 U.S.C. § 636(b)(1).

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor.  Id. at 255.

### III.   DISCUSSION

McCormack advances objections both to the magistrate judge's findings regarding his discrimination claims based on age and national origin and to findings regarding his retaliation claims.  The court considers each of the claims in turn.

#### A.     Discrimination Based on Age and National Origin

Title VII and the ADEA provide that "[i]t shall be an unlawful employment practice for an employer . . . to refuse to hire . . . or otherwise to discriminate against any individual . . . because of" such individual's sex or age.[4]  42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 623(a)(1).  In general, there are "two avenues" by which a plaintiff may prove wrongful discharge based on discrimination.  See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004) (en banc).  First, a plaintiff may "utilize

---

[4] Although the statutes are similar in language, they differ significantly in that the ADEA requires proof "by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision," Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009), while Title VII claims only require that a plaintiff demonstrate that the prohibited characteristic was a motivating factor in the employment decision, even if it was not the sole motivating factor.  See 42 U.S.C. § 2000e-2(m); Price Waterhouse v. Hopkins, 490 U.S. 228, 241 (1989).  However, because the court finds that McCormack has not satisfied his burden of showing that either national origin or age was a factor in Boeing's decision not to rehire him, this variance between the statutes is not germane to the case at hand.

ordinary principles of proof." Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999) (internal quotations omitted), abrogated on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). To establish discrimination using this method, a plaintiff must "demonstrat[e] through direct or circumstantial evidence that . . . discrimination motivated the employer's adverse employment decision." Hill, 354 F.3d at 284. McCormack appears to concede that he cannot prove wrongful termination using ordinary principles of proof. Pl.'s Resp. 26.

The second avenue available to plaintiffs is to follow the burden-shifting approach first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Hill, 354 F.3d at 285 (applying the McDonnell Douglas approach to Title VII and ADEA claims); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (assuming that the McDonnell Douglas burden-shifting framework applies to ADEA claims). The McDonnell Douglas framework establishes a three-step proof scheme under which the burden of evidentiary production is shifted back and forth between the plaintiff and defendant; however, the ultimate burden of persuasion never shifts from the plaintiff to prove intentional unlawful discrimination. See Williams v. Cerberonics, Inc., 871 F.2d 452, 456 n.2 (4th Cir. 1989). Under McDonnell Douglas, the plaintiff must first establish a "prima facie case of discrimination." Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)). Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. Finally, if the defendant meets this burden, the plaintiff must

then prove that the defendant's proffered reasons "were not its true reasons, but were a pretext for discrimination." Reeves, 530 U.S. at 143.

At the first step of the McDonnell Douglas approach, a plaintiff establishes a prima facie case of failure to hire based on age or national origin by showing that: (1) he is a member of a protected class; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position in favor of someone outside the protected class under circumstances giving rise to an inference of unlawful discrimination. Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir. 2004); Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998).

The parties do not dispute that McCormack meets the first two elements – he is a member of a protected class based on his age and national origin and he applied for the positions in question. In addition, the parties have not objected to the magistrate judge's determination that McCormack was qualified for the positions of painter levels A, B, and C, as well as electrical assembler B.

McCormack's first objection concerns the magistrate judge's finding that McCormack failed to establish the fourth prong of his prima facie case – that he was rejected for the position in favor of someone outside the protected class under circumstances giving rise to an inference of unlawful discrimination. See R&R 10. McCormack argues that he has presented evidence sufficient to infer unlawful discrimination. Pl.'s Objections 4-5. For the purposes of this order, the court will assume, without deciding, that McCormack has met the fourth prong and therefore established a prima facie case of discrimination.

Because the court assumes that McCormack has established a prima facie case, a presumption of illegal discrimination arises, and the burden of production shifts to the employer who must articulate a legitimate, non-discriminatory reason for the employment action. Hoyle v. Freightliner, LLC, 650 F.3d 321, 336 (4th Cir. 2011). The magistrate judge found that Boeing has articulated legitimate, nondiscriminatory reasons for not hiring McCormack. R&R 11. McCormack does not object to the magistrate judge's findings or argue that the Boeing's proffered reasons are illegitimate or discriminatory.[5] Therefore, the court adopts the R&R and finds that Boeing has met its burden of producing evidence of legitimate, non-discriminatory reasons for its actions.[6]

Where a defendant employer carries its burden to produce evidence of a legitimate, non-discriminatory reason for its actions, "the presumption raised by the prima facie case is rebutted," Burdine, 450 U.S. at 255, and the prima facie case thus "is no longer relevant" and "simply drops out of the picture." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993). Rather, the question becomes whether the plaintiff can demonstrate that the employer's stated reason is pretextual, which requires the plaintiff "to prove 'both that the reason was false, and that discrimination was the real

---

[5] McCormack's objections are somewhat difficult to parse. While he objects to the magistrate judge's decision "regarding the Defendant's non-discriminatory reason" for not hiring him, his rationale is more akin to an argument about pretext. See Pl.'s Objections 6-10. In other words, McCormack does not argue that Boeings proffered justifications are illegitimate or discriminatory; rather, he argues that those justifications were not the actual justifications motivating Boeing's action here. See, e.g., Pl.'s Objections 6 (arguing that "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose"). Therefore, this objection will be treated as an objection to the magistrate judge's findings regarding pretext, despite the fact that McCormack never uses the word "pretext" in his brief.

[6] A detailed discussion of the justifications advanced by Boeing follows below in the court's consideration of McCormack's objection concerning pretext.

reason.'" Adams v. Trs. of the Univ. of N.C.-Wilmington, 640 F.3d 550, 560 (4th Cir. 2011) (quoting Jiminez v. Mary Washington Coll., 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original). "[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 411 (7th Cir. 1997).

McCormack objects to the magistrate judge's findings regarding pretext on the grounds that a reasonable jury could find that Boeings justifications are false, and therefore that discrimination was the real reason McCormack was not hired. Pl.'s Objections 6. A plaintiff may establish pretext "by showing that the employer's proffered explanation is unworthy of credence" using "the evidence establishing the plaintiff's prima face case 'and inferences properly drawn therefrom.'" Reeves, 530 U.S. at 143 (quoting Burdine, 450 U.S. at 255 n.10). Although "proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct,'" the Supreme Court has made clear that in appropriate circumstances "rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination;" that is, "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Reeves, 530 U.S. at 146-47 (quotations and citation omitted). As the Supreme Court noted, "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best

11

position to put forth the actual reason for its decision." Reeves, 530 U.S. at 147.  As a result, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and allow the plaintiff to show a genuine dispute of material fact sufficient to defeat summary judgment. Id. at 148.

Boeing asserts that McCormack was not hired for the painter level A and B jobs because Jennings and Owens knew that McCormack was not happy with his pay or his job responsibilities.  Jennings Dep. 27:4-28:3; Owens Dep. 21:6-12.  They were also concerned that McCormack would needlessly increase Boeing's training expenses, considering that he would have to go through the same training he had already gone through and that there was a possibility that he may resign again.  Jennings Dep. 27:1-4; Owens Dep. 21:12-18.  McCormack has admitted that he was unhappy with and complained about his pay, Pl.'s Dep. 173:3-18, and in his exit survey cited higher compensation as something he would change about Boeing.  Def.'s Mot. Ex. H.  McCormack has introduced no evidence to show that Boeing's reasons for not hiring him for these positions were false.[7]

Boeing asserts that McCormack was not hired for the painter C position because there were other more qualified applicants.  See Bradley Dep. 20:1-22:21.  McCormack

---

[7] In his response brief, McCormack argues that Dietrich testified that McCormack did not complain at work.  Pl.'s Resp. 34.  However, as noted by the magistrate judge, a review of Dietrich's deposition reveals he merely testified that he did not know if McCormack complained "while he was working on airplanes."  Dietrich Dep. 10:3-5.  Moreover, Dietrich testified that McCormack complained to him about pay "quite often."  Dietrich Dep. 9:24-10:2.

contends that he is more qualified (or equally qualified) than the two individuals hired.[8] Pl.'s Resp. 34.  However, McCormack provides no evidence to support this statement.[9] Even though McCormack may believe that he is more qualified, "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (quotation and citation omitted); see also Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005) (holding that courts "do not sit as a "super-personnel department weighing the prudence of employment decisions" made by defendants).

Boeing also asserts that more qualified individuals were hired for the electrical assembler B position.  Although McCormack claims he was "as qualified" as those hired, Pl.'s Resp. 35, he admits that while he had three and a half years' experience as an electrical assembler B, Pl.'s Dep. 311:19-21, "the electrical jobs went to people with like 20 plus years experience."  Pl.'s Dep. 315:9-11.  Once again, McCormack has not advanced evidence that Boeing's proffered justification was false.

McCormack has simply failed to provide any evidence giving rise to a genuine issue of material fact regarding whether Boeing's reasons for failing to hire him were

---

[8] In failure to hire cases, a plaintiff can establish pretext not only by showing that the employer's proffered justifications were false, but also by showing that "[his] qualifications were so plainly superior that the employer could not have preferred another candidate." Dennis v. Columbia Colleton Med. Ctr., 290 F.3d 639, 648 n.4 (4th Cir. 2002).  In other words, the plaintiff must establish that the decision-maker could not have preferred the selectee "in the absence of some ulterior motive such as a discriminatory desire to deny the position to [the plaintiff]." Herring v. Thompson, 2003 WL 23590541, at *7 (D. Md. May 12, 2003) (characterizing this standard as a "heavy burden").  McCormack has not advanced such an argument here, and even if he had, he falls well short of satisfying the associated heavy burden.

[9] McCormack references an EEO report for the prospect that his resume referenced more experience than the other individuals.  Pl.'s Resp. 34.  However, as noted by the magistrate judge, the exhibit referenced merely reiterates Bradley's reasons for finding the other employees more qualified.  See Pl.'s Resp. Ex. 48.

false.[10]  The "final pretext inquiry merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination, which at all times remains with the plaintiff."  Merritt, 601 F.3d at 294 (quotation marks and alteration omitted).  Because McCormack filed to show pretext, he has not carried his burden and therefore the court grants Boeing summary judgment on McCormack's discrimination claims based on age and national origin.

### B.     Retaliation

Title VII and the ADEA both make it unlawful for an employer to discriminate against any employee or applicant because such individual has opposed a practice made unlawful by either law, or because such individual "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation" under either law. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d).  Retaliation claims follow the three-step framework of McDonnell Douglas.  Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998).  To prove a prima facie case of retaliation, a plaintiff must prove three elements:  (1) that he engaged in protected activity; (2) that an adverse employment action was taken against him; and (3) that there was a causal link between the protected activity and the adverse employment action.  Id.

McCormack objects to the magistrate judge's recommendation that this court grant Boeing summary judgment on his retaliation claim.  Pl.'s Objections 10.  McCormack's objections, however, are mostly conclusory and lack evidentiary support.  While McCormack argues that he has "clearly presented facts that substantiate a genuine

---

[10] McCormack lists several "significant facts" which he claims support his argument that Boeing's justifications were false.  Pl.'s Objections 6-10.  However, none of those facts directly refute the reasons Boeing gave for not hiring McCormack. Therefore, to the extent those facts are in dispute, they are not material facts.

issue of material fact for the jury" and that "the record clearly shows a causal connection between the Plaintiff's complaints and the failure to hire," he provides absolutely no evidentiary support for these statements.  "It is not the Court's responsibility to comb the record either for supporting evidence or to craft arguments for a party."  <u>Pauling v. Greenville Transit Auth.</u>, No. 6:05-cv-1372, 2006 WL 3354512, at *8 (D.S.C. Nov. 16, 2006).  Regardless, even if the court assumes McCormack could satisfy a prima facie showing of retaliation, Boeing has advanced legitimate, nondiscriminatory reasons for not hiring him.  And, as discussed at length above, McCormack has failed to show that Boeing's proffered justifications were pretextual.  McCormack "bears the ultimate burden of proving that [he] has been the victim of retaliation."  <u>Laughlin</u>, 149 F.3d at 258.  He has not done so here.  Therefore, Boeing is entitled to summary judgment on McCormack's retaliation claims.

## IV.   CONCLUSION

Based on the foregoing, the court **ADOPTS** the magistrate judge's R&R and **GRANTS** defendant's motion for summary judgment.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 31, 2014**
**Charleston, South Carolina**